X. Young Lai, #275396
Law Offices of X. Young Lai
111 N Market St. Ste 300
San Jose, CA 95113
TEL: (408)228-3995
FAX: (866)610-9505
gagelegal@gmail.com

Xiaoyong Lai, Pro per

# IN THE UNITED STATES DISTRICT COURT

# FOR NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XIAOYONG LAI,<br><br>      Plaintiff<br><br>    vs.<br><br>MENG JING LU a.k.a. MENGJING LU,<br>an individual; and<br>LU ZHANG, an individual<br><br><br>      Defendants. | CASE NO.:<br><br>COMPLAINT FOR<br>  (1) BREACH OF CONTRACT<br>  (2) COMMON COUNTS<br>  (3) FRAUDULENT TRANSFER<br>  (4) CONSPIRACY<br><br>JURY DEMANDED |

COMPLAINT

## PARTIES

1. Plaintiff XIAOYONG LAI is an individual residing in and a citizen of the State of California.

2. Defendant MENG JING LU a.k.a. MENGJING LU ("Lu") is an individual residing in and a citizen of the State of Nevada.

3. Defendant LU ZHANG ("Zhang") is an individual residing in and a citizen of the State of Nevada.

## JURISDICTION

4. Plaintiff is a citizen of the State of California for purposes of diversity jurisdiction under 28 U.S. C. § 1332.

5. Defendants are citizens of the State of Nevada for purposes of diversity jurisdiction under 28 U.S. C. § 1332.

6. This Court has the original subject matter jurisdiction with respect to this action pursuant to 28 U.S. C. § 1332 as there exists complete diversity of citizenship between Plaintiff and Defendants and the amount of controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

## VENUE

7. Venue is appropriate in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FICTITIOUS NAMED DEFENDANTS

8. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 10, are unbeknownst to Plaintiff, who thereby sues these defendants by such fictitious names. Plaintiff will pray leave of this Court to amend this Complaint to allege their true names and capacities once ascertained. Plaintiff is informed and believes, and thereon alleges that each defendant designated herein is responsible in some actionable manner for the occurrences and injuries alleged herein.

9. At all times herein relevant, defendants, and each of them, was an owner, a co-owner, an agent, representative, partner, and/or alter ego of its co-defendants, or otherwise acting on behalf of

each and every remaining defendant and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an owner, a co-owner, an agent, representative, partner, and/or alter ego of its co-defendants, with the full knowledge, permission and consent of each and every remaining defendant, each co-defendant having ratified the acts of the other co-defendants.

10. Plaintiff is informed and believes, and thereon alleges that each of the defendants named herein as DOES 1 through 10, inclusive, were and are in some manner responsible for the actions, acts and omissions herein alleged, and for the damages caused by the defendants, and are, therefore, jointly and severally liable for the damages caused to Plaintiff.

11. Plaintiff is informed and believes and thereon alleges that each of the defendants including Does 1 through 10, inclusive, were, at all times herein relevant, acting in concert with, and in conspiracy with, each and every one of the remaining defendants.

12. Wherever appearing in this Complaint, each and every reference to defendants or to any of them is intended to be and shall be a reference to all defendants herein, and to each of them, named and unnamed, including all fictitiously named defendants, unless said reference is otherwise specifically qualified.

### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

13. On or about October 24, 2019, Lisa Royals ("Royals"), the daughter of the decedent Chambers Daniel Adams ("Adams"), as the Trustee of the Adams Trust (the "Trust"), filed a probate petition against Lu for return of the Trust property, undue influence, financial elder abuse in the Superior Court of California for the County of Contra Costa (case number MSP19-01563). Royals alleged that in 2015, LU, then 59, was secretly married to Adams, then 95, and that before Adams passed away in 2019 at the age of 99, Lu, through undue influence, have Adams mortgage one house and sell another, and transfer the proceeds to Lu.

14. On the same day, Royals also filed an application for right to attach order ("RTAO") and order for issuance of writ of attachment for the amount of $3, 440.000 against Lu.

15. On October 25, 2029, Royals filed an ex parte application for a temporary protective order and sought to freeze Lu's assets in the amount of $3,440,000, and the trial court granted the application and issued a protective order pending the determination of RTAO.

---

COMPLAINT

16. On or about November 4, 2019, Lu employed Plaintiff as counsel.

17. On February 3, 2024, LU filed a verified cross-petition for among other things, financial elder abuse, against Royals, who demurred to the cross-petition. The trial court sustained the cross-petition with prejudice on August 11, 2024.

18. On September 4, 2020, the court granted the application of RTAO and issued a writ of attachment in the amount of $3, 440.000.

19. On January 27, 2020, Royals also initiated a civil action (case number: MS20-0048) in the Superior Court of California for the County of Contra Costa to recover possession of the house that LU was living in.

20. On December 15, 2020, the trial court entered a summary judgment in favor of Royals and against Lu.

21. The probate and civil actions gave rise to four (4) appeals and three (3) writs of mandates to the California Court of Appeal for the First Appellate District, and one (1) petition for review to the California Supreme Court. The appellate briefs for Lu total 177,828 words.

22. On July 18, 2022, the Court of Appeal issued a decision, reversing the RTAO and the order sustaining Lu's cross-petition alleging financial elder abuse. (*Royals v. Lu* (2022) 81 Cal.App.5th 328.)

23. The Court of Appeal noted the "detailed" evidentiary showing made by Lu, including seven (7) declarations and 32 handwritten notes and email exchanges, and took special pains to read through "extensive" correspondence and notes between Adams and the parties to determine his testamentary intent. (*Royals*, 81 Cal.App.5th at p.338.) The Court of Appeal was amazed by Adam's cogent and rational writings, moved by his sanguine acceptance of the coming death, and acknowledged his ability to engage in fairly complicated estate planning. (*Ibid*.)

24. The decision was certified for publication with precedential value. First, it is established, for the first time, that punitive damages and statutory penalties are not damages and therefore, they do not support attachable amount. Furthermore, "a fixed or readily ascertainable amount" under California Code of Civil Procedure section 483.010 is also required for extracontractual claims where a statute authorizes attachment and creates an exception to the contract-claim requirement. Lastly, unless

---

COMPLAINT

3

statutorily provided otherwise, no hearsay evidence may be used for applications for RTAO, the affiant must set forth specific facts within his or her personal knowledge to support the four requisite facts.

25. The next day after the appellate decision was issued, Royals' attorney contacted Plaintiff, and on the third day, July 20, 2022, the parties reached a "walk away" settlement agreement with each side receiving nothing and bearing their own fees and costs., The trial court approved and adopted the settlement on August 8, 2022.

26. The probate case was dismissed with prejudice on August 25, 2022, and on the civil action, Royals filed an acknowledgment of judgment on August 30, 2022.

27. During the almost three years' litigation, Lu paid only a small fraction on the pretext that she had no money, but at the same time, she implored Plaintiff to continue representing her.

28. In August 2022, Plaintiff began to talk to Lu for unpaid attorney's fees and costs. But Plaintiff then learned, for the first time, that in or about August 2020, Lu wire-transferred funds in a total of about $700, 000 to China to buy a house that was under forced sale by the Chinese Government. In addition, she transferred two houses in Los Vegas, Nevada to her niece, Zhang, with no consideration, because she thought she was going to lose the probate case. The wire transfer and deed transfers all took place in the State of California.

29. On January 2, 2023, Plaintiff sent Lu an email with a final accounting of unpaid attorney's fees and costs of $422,463 attached with invoices and receipts. In the same email, Plaintiff also attached a Notice of Client's Right to Fee Arbitration and advised Lu that she had 30 days to request an arbitration of the fees and costs. Lu did not respond.

### Count 1 -Breach of Contract (Against Lu)

30. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth herein.

31. On November 4, 2019, Plaintiff and Lu entered into a written retainer agreement with the trial work. On June 8, 2021, the parties signed an additional agreement in regard to appellate work. Both agreements provide that attorney's fees are charged by hour with an hourly rate of $400.

32. Plaintiff performed all or substantially all of the significant things that the contract required it to perform.

COMPLAINT

33. Lu breached the contract by failing or refusing to pay the attorney's fees and costs, and as a result, Plaintiff was damaged for $422,463.

**Count 2 -Common Counts (Against Lu)**

34. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth herein.

35. Lu became indebted to Plaintiff for work, labor, and services rendered at her special instance and request.

36. Lu has not paid Plaintiff for the services the reasonable value of the services that were provided, and as a result, Plaintiff was damaged for $422,463.

**Count 3-Fraudulent Transfer (Against All Defendants)**

37. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth herein.

38. On August 31, 2020, Defendant Lu signed a Grant, Bargain, Sale Deed in the County of Contra Costa, State of California, and transferred the title to Zhang of the real property situated in the County of Clark, State of Nevada, with Assessor Parcel Number ("APN") 163-23-113-111, commonly known as 4284 Newcastle Road, Las Vegas, Nevada. The real property is described as follows: Lot One Hundred Five (105) in Block Nine (9) of Laurelwood Spring Valley Unit No. 4, as shown by Map thereof on file in Book 18 of Plats, Page 33, in the Office of the County Recorder of Clark County, Nevada.

39. The Deed was recorded in in the Office of the County Recorder of Clark County, Nevada on September 14, 2020.

40. On August 31, 2020, Defendant Lu signed a Grant, Bargain, Sale Deed in the County of Contra Costa, State of California, and transferred the title to Zhang of the real property situated in the County of Clark, State of Nevada, with Assessor Parcel Number ("APN") 163-18-616-087, commonly known as 4210 Gannet Circle, Unit 295, Las Vegas, Nevada. The real property is described as follows: The land referred to is situated in the County of Clark, Qty of Las Vegas, State of Nevada, and is described as follows:

The land referred to is situated in the County of Clark, Qty of Las Vegas, State of Nevada, and

PARCEL I:

---

An undivided 1/16 Interest in Lot Eight - B (8-B) of the AMENDED PLAT OF THE AMENDED PLAT OF SPRING OAKS LOT J, as shown by map thereof on file in Book 36 of Plats, Page 63, in the Office of the County Recorder, cark County, Nevada.

EXCEPTING THEREFROM all Living Units shown upon said plat and as defined in the Declaration of Restrictions recorded August 7, 1987 in Book 870807 of Official Records as Document No. 224, and re-recorded September 3, 1987 in Book 870903 of Official Records as Document No. 46.

RESERVING THEREFROM for the benefit of the owners of condominiums located on Lots 5, 6, 8-A, 9, 10, 11-A, 11-B, 12-A, 12-B, 13, 14, and 15, non-exclusive easements, over and under the common area as shown upon said plat and as defined in the Declaration of Restrictions.

FURTHER RESTRICTING THEREFROM the right to possession of all those areas designated as Restricted Common Area on the plat of said subdivision.

PARCEL II:

Unit No. Two Hundred Ninety-Ave (295) as shown on the AMENDED PLAT OF THE AMENDED PLAT OF SPRING OAKS LOT J, and as defined in the Declaration of Restrictions.

PARCEL III:

The exclusive right to use and possession of those portions designated as "Restricted Common Area" which are adjacent to Parcel I above as shown on the plat of said subdivision.

PARCEL IV:

A non-exclusive easement for ingress and egress and recreational use on, over, and under the Common Area of Lots 5, 6, 8-A, 9, 10, 11-A, 11-B, 12-A, 12-B, 13, 14, and 15, which easement is appurtenant to Parcels I and II above. This easement shall become effective upon recordation of a Declaration of Annexation declaring any unit in said lot to be subject to said Declaration of Restrictions.

41. The Deed was recorded in in the Office of the County Recorder of Clark County, Nevada on September 14, 2020.

42. Lu made the two real property transfers (the "Transfers") to an insider, Zhang, without receiving a reasonably equivalent value, the property was of substantially all Lu's assets in the United

States, the Transfers were not disclosed, the Transfers were made after Lu was sued and faced with substantial liability, Lu was insolvent or became insolvent as the result of the Transfers, Lu has concealed and removed substantial assets out of the United States, Lu has been residing in 4284 Newcastle Road, Las Vegas, Nevada, and renting out 4210 Gannet Circle, Unit 295, Las Vegas, Nevada after the Transfers, and retains possession or control of the property transferred after the Transfers.

43. Lu therefore made the Transfers and other transfers with actual intent to hinder, delay, and defraud their creditors within the meaning of Cal. Civ. Code § 3439.04 (a) (1).

44. Furthermore, by way of the Transfers and/or other transfers, Lu transferred and removed out of the United States, substantially all of her assets. In addition, Lu was insolvent at that time or became insolvent as a result of the Transfers and/or other transfers, because the sum of Lu's debts exceeded the sum of her remaining assets, and she was generally not paying her debts (including but not limited to the debt owed to Internal Revenue Service), when they became due, within the meaning of Cal. Civ. Code § 3439.02.

45. Lu made the Transfers and other transfers without receiving adequate value and she was insolvent at that time or became insolvent as a result of the Transfers and other transfers, and Plaintiff's claim arose before the Transfers were made. As such, Lu made constructive fraudulent transfers, within the meaning of Cal. Civ. Code § 3439.05.

46. Or alternatively, Lu made the Transfers and other transfers without receiving adequate value, and Lu intended to incur or believed or reasonably should have believed that she would incur attorney's fees and costs beyond her ability to pay as they became due, or she retained legal representation for which the remaining assets were unreasonably small in relation to the legal fees and costs. As such, Lu made constructive fraudulent transfers, within the meaning of Cal. Civ. Code § 3439.04 (b) (2).

47. Pursuant to Cal. Civ. Code § 3439.07, Plaintiff is entitled to all the remedies, including but not limited to avoidance of the transfer of assets, injunction, attachment, and execution levy of the assets fraudulently transferred.

**Count 4-Conspiracy (Against All Defendants)**

48. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth herein.

COMPLAINT

49. Prior to the Transfers and other transfers, Zhang knew Lu's liability and her plan to defraud her creditors. Zhang fraudulently and unlawfully agreed and conspired together and acted in concert to conceal the true ownership of the property by transferring the title of the property from Lu to Zhang, with the intent to defraud creditors.

50. Zhang paid no consideration for the property and the title is vested in Zhang, with a confidential agreement that Lu would retain actual possession and control of the property after Transfers, and Zhang acted merely as a disguised trustee for Lu.

51. By virtue of the conspiracy and the acts in pursuit of it, the property as of today is in the name of Zhang, but the property is in fact owned by Lu, consequently hindering, delaying, and defrauding Plaintiff.

52. As a conspirator, Zhang is liable for all the acts done in furtherance of the conspiracy and responsible for all damages ensuing from the wrongful act of fraudulent transfers.

### PRAYER

WHEREFORE, Plaintiff demands the following for their claims for relief which is more specifically set forth under the various claims:

First Claim for Relief - Unpaid attorneys' fees and costs in the amount of $422,463, plus interest.

Second Claim for Relief - Unpaid attorneys' fees and costs in the amount of $422,463, plus interest.

Third Claim for Relief- For an order that the transfers from Lu to Zhang be set aside and voided to the extent necessary to satisfy Plaintiff's claims, plus interest and costs, for an order of execution levy on the assets fraudulent transferred, and for an order enjoining Lu and Zhang from selling, encumbering, or disposing of the real property that has been fraudulent transferred.

Fourth Claim for Relief- For an order holding Lu and Zhang jointly and severally liable for the damages;

For such other orders as the court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial on this matter by jury.

Dated: 9/12/2024 _____

X. Young Lai, Plaintiff