Your Name: Mengjing Lu

Address: 4284 Newcastle Road Las Vegas NV 89103

Phone Number: 702-622-0778

Email Address: mengjinglu@yahoo.com

Pro Se

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| Xiaoyong Lai<br><br><br>Plaintiff,<br><br>v.<br><br>MENG JING LU a.k.a. MENGJING LU, an<br>individual; and<br>LU ZHANG, an individual<br><br><br>Defendant. | Case No. 5:24-cv-06470-VKD<br><br><br>**DEFENDANT MENGJING LU'S ANSWER AND COUNTERCOMPLAINT** |

Defendant Mengjing Lu ("Defendant"), by and through her undersigned, hereby answers the Complaint filed by Plaintiff Xiaoyong Lai ("Plaintiff") and asserts her Counter-Complaint.

## I. FACTUAL ALLEGATIONS

Given that certain facts presented in the Complaint are inaccurate or incomplete, Defendant provides the following corrections and clarifications to the factual allegations. Defendant Mengjing Lu declares under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. On or about November 4, 2019, Defendant entered into a "Legal Representation Fee Agreement" (hereinafter "First Fee Agreement," attached as Exhibit A) with Plaintiff. This agreement specifically scoped legal services for "In The Matter of Adams Trust," case number MSP19-01563, in the State of California.

2. On or about January 27, 2020, without prior negotiation or the execution of a separate fee agreement with Defendant, Plaintiff commenced work on "Recovery Possession of the House" (hereinafter "Recovery Possession"), case number MS20-0048. This case was distinct and outside the scope of the "First Fee Agreement."

3. In February 2020, Plaintiff further commenced work on appeal cases arising from "In The Matter of Adams Trust," which were also outside the scope of the "First Fee Agreement," without prior negotiation or the execution of a separate fee agreement with Defendant.

4. In June 2020, Defendant experienced extremely severe physical and mental health issues. In anticipation of her potential demise, in August 2020, Defendant transferred two properties to Defendant Lu Zhang to settle existing debts. Plaintiff was informed of these transfers in August 2020.

5. On February 20, 2021, Defendant received an eviction notice related to the "Recovery Possession" case. Shocked by this development, Defendant immediately contacted Plaintiff. It was only then that

Defendant became aware that Plaintiff had initiated work on this separate matter without her express agreement. To date, no written agreement has been signed between Plaintiff and Defendant for the "Recovery Possession" case. Plaintiff advised Defendant to vacate the house in dispute, and in reliance on this instruction, Defendant moved to Las Vegas, Nevada, on February 24 2021.

6. On or about June 8, 2021, Plaintiff asserted that he lacked the requisite authorization to represent Defendant in certain procedural steps in the appeal cases arising from "In The Matter of Adams Trust," for which no prior agreement had been signed. Plaintiff requested that Defendant execute a second "Legal Representation Fee Agreement" (hereinafter "Second Fee Agreement," attached as Exhibit B) to provide proof of representation to the court. Defendant agreed and executed said agreement, which was scoped to cover appeals and writs arising from "In The Matter of Adams Trust," and was executed in the State of Nevada.

7. The aforementioned agreements (Exhibits A and B) are unconscionable. At the time of their execution, Defendant was suffering from profound grief due to the recent loss of her husband and was under severe physical and mental duress. The terms of said agreements, including the $400 hourly rate, are excessively one-sided and oppressive given Defendant's vulnerable state and lack of legal experience.

8. Between November 4, 2019, and December 7, 2021, Defendant repeatedly requested detailed information regarding legal fees from Plaintiff. Defendant consistently advised Plaintiff that she would terminate the agreements if the legal fees became excessive. Plaintiff failed to provide the requested details of the costs; instead, Plaintiff instructed Defendant to prepay legal fees upon request when available funds were depleted. Defendant complied with Plaintiff's requests and prepaid legal fees on multiple occasions, as detailed in Exhibit C. Notably, Plaintiff failed to provide Defendant with periodic billing statements, as expressly required by Term 7 of both the First and Second Fee Agreements (Exhibits A and B).

9. On or about December 8, 2021, more than two years after the execution of the First Fee Agreement,

Plaintiff transmitted the initial accumulated invoice (attached as Exhibit D) to Defendant, totaling $194,258. Believing that all costs should have been covered by the prepaid fees, Defendant was shocked by the excessive amount. Defendant promptly informed Plaintiff that the invoiced costs were unexpected and unreasonably high, and that she would have terminated the agreement(s) had she been apprised of the excessive charges in a timely manner.

10. On or about December 23, 2021, Defendant commenced negotiations with Plaintiff to discuss the legal fees. Defendant proposed capping all legal costs incurred prior to December 8, 2021, at $100,000; Plaintiff insisted on a cap of $120,000.

11. On or about December 28, 2021, in order to facilitate the continued provision of legal representation, Defendant and Plaintiff entered into an oral agreement to modify the existing contracts (hereinafter "Oral Agreement"). The terms of the Oral Agreement were as follows:

    a.  Plaintiff would not charge Defendant for the appeal cases.

    b.  All legal fees incurred prior to December 8, 2021, would be capped at $120,000 if the "Adams Trust" case was lost, and Defendant would pay Plaintiff an additional $50,000 as a reward if the case was won.

    c.  A 15% discount would be applied to all fees incurred after December 8, 2021.

    d.  Defendant would make her best effort to pay Plaintiff the amount owed ($66,900) under the Oral Agreement within the subsequent six-month period. In the event that Defendant was unable to provide full payment within that time frame, Defendant would remit payment upon the conclusion of "In The Matter of Adams Trust" and the release of her funds held in interpleader ($252,068.53) and by the sheriff's office ($30,229.03).

12. Subsequent to the Oral Agreement, Defendant requested that its terms be formally documented. Plaintiff indicated that he would only provide a formal written agreement if Defendant immediately repaid the outstanding balance in full. Defendant did not have the funds to make full payment at that

time and therefore did not agree to Plaintiff's condition.

13. On January 27, March 28, and April 11, 2022, Defendant made three payments to Plaintiff, totaling $10,000 (see Exhibit C).

14. On or about June 3, 2022, the $30,229.03 fund held by the sheriff's office was released into Defendant's bank account. Plaintiff collected said funds, and Defendant consented to the collection in accordance with the terms of the Oral Agreement.

15. In July 2022, a settlement was reached in "In The Matter of Adams Trust Matter," and a Settlement Agreement (attached as Exhibit E) was executed. Thus, the case was neither "lost" nor "won" as per the terms of the Oral Agreement. Paragraph 5 of said agreement stipulated that the interpleaded funds would be released directly to Defendant.

16. On or about August 8, 2022, upon the conclusion of "In The Matter of Adams Trust Matter," Plaintiff urged Defendant to immediately sign the court-issued "STIPULATION AND ORDER APPROVING AND ADOPTING SETTLE AGREEMENT" (hereinafter "Settlement Order," attached as Exhibit F) before submitting it to court for a judge's signature. Plaintiff misrepresented to Defendant that the stipulations in this order were identical to those in the Settlement Agreement, thereby misleading her to believe that the interpleaded funds would be released directly to her. Relying on Plaintiff's representations and urgent insistence, Defendant signed the Settlement Order without a detailed review.

17. On or about August 20, 2022, upon receiving the Settlement Order signed by the judge, Defendant was surprised to learn that Plaintiff had falsified the stipulation regarding the interpleaded funds. Specifically, the Settlement Order stipulated that the interpleaded funds would be released to Plaintiff's trust account, instead of directly to Defendant.

18. Following this discovery, Defendant expressed her dissatisfaction in a text message, asserting that the interpleaded funds should have been released to her, and affirmed her obligation to pay outstanding fees per the Oral Agreement, even if she had to borrow funds. Plaintiff responded by misrepresenting that he

had informed Defendant that the interpleaded funds would be released to his trust account, and groundlessly asserted that Defendant was attempting to evade payment and had made secret transfers.

19. From December 2021, when the Oral Agreement was established, to August 8, 2022, when the case was concluded, Plaintiff persisted in concealing the details of legal costs and failed to provide Defendant with periodic billing statements.

20. From August 2022, following the conclusion of the case, to December 22, 2022, Defendant made multiple inquiries to Plaintiff regarding the details of costs incurred since the Oral Agreement. Plaintiff did not provide any such details.

21. On or about December 23, 2022, the aforementioned interpleaded funds, amounting to $252,068.53, were released to Plaintiff's trust account, rather than to Defendant.

22. In January 2023, Plaintiff sent Defendant a second set of invoices, totaling $777,861. These invoices included the original invoice from around December 8, 2021, plus later invoices. The invoices contained many unreasonable charges, including but not limited to: (1) costs incurred before December 8, 2021, that were not in the original invoice but should have been, and thus covered by the $120,000 Oral Agreement cap; (2) charges for clerical or paralegal work, and costs from ten extensions caused by Plaintiff; (3) charges for tasks related to "Recovery Possession" for which no agreement was entered; and (4) incorrect charges from over-logging, as detailed in Exhibit G. It is important to note that Exhibit G only lists some of the identified over-logged tasks, as it is challenging to identify other over-logged tasks given Plaintiff's denial of sending detailed periodic and timely billing statements despite repeated requests by Defendant. Defendant estimates the total reasonable costs after December 8, 2021, based on the amount of work, to be $60,000.

23. In summary, Plaintiff retains a total of $355,397.56 from prepayments, funds collected from the sheriff's office, and funds released from the interpleading fund. The total reasonable legal fees, based on the Oral Agreement and Defendant's estimation of post-December 8 costs, 2021, are approximately

$180,000 ($120,000 + $60,000). Therefore, Plaintiff owes Defendant $175,397.56.

24. On January 17, 2023, Defendant filed a complaint against Plaintiff with the California State Bar, reporting Plaintiff's alleged malpractice. The California State Bar suggested going through the arbitration process. The arbitration is still pending due to Defendant's ongoing health issues.

## II. RESPONSE TO PLAINTIFF'S ALLEGATIONS

In this section, Defendant responds to the allegations in Plaintiff's Complaint. Paragraphs in **bold** refer to those in the Complaint. Defendant generally denies the allegations contained in the Complaint, except as specifically admitted herein.

25. **Paragraph 7:** Defendant contends that the venue is improper in this Court. While Defendant admits that the initial contract was formed in California, subsequent agreements and the core events of the dispute, including the properties involved in alleged fraudulent transfers and conspiracy, are located in Nevada, making Nevada a more appropriate venue.

26. **Paragraphs 13-14:** Defendant admits the facts in these paragraphs.

27. **Paragraph 15:** Defendant admits that a cross-petition was filed, but states that it was filed in 2020, not 2029.

28. **Paragraph 16:** Defendant admits hiring Plaintiff as counsel and signing a "Legal Representation Fee Agreement," but states the scope of service in this agreement is limited to "The Matter of Adams Trust," not including the relevant appeals and writs.

29. **Paragraph 17:** Defendant admits that a cross-petition was filed, but states that it was filed in 2020, not 2024.

30. **Paragraphs 18-20:** Defendant admits the facts in these paragraphs.

31. **Paragraph 21:** Defendant admits the facts and effort in this paragraph, but contends that the amount of work is not measured by the number of words; rather, it relies more on the evidence provided by

Defendant and witnesses.

32. **Paragraphs 22-26:** Defendant admits the factual allegations contained in these paragraphs.

33. **Paragraph 27:** Defendant denies the allegations in paragraph 27. Defendant asserts that, as evidenced by the attached invoices, Plaintiff was prepaid upon request from November 1, 2019, to December 7, 2021. Defendant never refused to pay Plaintiff, as detailed in paragraphs 8-14 in Section I. Even after receiving unexpectedly high legal fees, Defendant continued to pay or negotiated options to pay Plaintiff. Defendant maintains that she did not implore Plaintiff to continue representing her; rather, Defendant consistently advised Plaintiff that she would terminate the representation if the legal fees became excessive, as detailed in Section I, paragraph 8. On the contrary, Plaintiff refused to provide Defendant with timely and periodic billing statements, thus depriving Defendant of the right to terminate the contracts in a timely manner.

34. **Paragraph 28:** Defendant denies the allegations contained in paragraph 28. Defendant admits transferring two properties to Defendant Lu Zhang. However, Defendant Mengjing Lu specifically denies that these transfers were made without consideration or because Defendant Mengjing Lu believed she would lose the probate case. The transfers were made to settle debts owed to Lu Zhang in anticipation of Defendant Mengjing Lu's potential death, as she was experiencing serious physical and mental health issues at the time. Defendant asserts that the claim of transferring funds to China to buy a house is ungrounded hearsay.

35. **Paragraph 29:** Defendant admits to the email correspondence referenced in paragraph 29. Defendant asserts that she did not respond to Plaintiff's emails or proceed with arbitration due to ongoing health issues.

36. **Paragraph 30:** Defendant denies the allegations contained in paragraph 30. By specifically denying the incorporation by reference in Paragraph 30 and other similar paragraphs, Defendant maintains the integrity of her earlier admissions and denials.

37. **Paragraph 31:** Defendant admits that a contract was signed on or about November 4, 2019, but denies that it constitutes the entire agreement between the parties. As stated in paragraph 11 in Section I, an Oral Agreement was established on December 28, 2021, which stipulates that the contracts would be continued if all costs incurred before December 8, 2021, were capped at $120,000, and a 15% discount would be applied to all costs incurred after December 8, 2021.

38. **Paragraph 32:** Defendant admits that Plaintiff performed some services required by the contract but asserts that Plaintiff breached the contract by failing to provide timely and complete periodic billing statements, even upon Defendant's repeated requests.

39. **Paragraph 33:** Defendant denies the allegations contained in paragraph 33. Defendant denies breaching the contracts by failing or refusing to pay legal fees as shown in payment history in Exhibit C. Defendant asserts that it was Plaintiff who breached the contract by failing to send timely and periodic billing statements, even though Defendant repeatedly requested, as detailed in paragraphs 8 and 19. The claimed damage of $422,463 is non-existent, on the contrary, Plaintiff retains $175,397.56 belonging to Defendant as detailed in paragraph 23, Section I.

40. **Paragraph 34:** Defendant denies the allegations contained in paragraph 34. By specifically denying the incorporation by reference in Paragraph 34 and other similar paragraphs, Defendant maintains the integrity of her earlier admissions and denials.

41. **Paragraph 35:** Defendant denies the allegations contained in paragraph 35 and contends that she is not indebted to Plaintiff. Plaintiff is, in fact, retaining $175,397.56 belonging to Defendant as detailed in paragraph 23, Section I.

42. **Paragraph 36:** Defendant denies the allegations contained in paragraph 36. Defendant reiterates that she does not owe Plaintiff any legal fees. To the contrary, Plaintiff retains $175,397.56 belonging to Defendant as detailed in paragraph 23, Section I.

43. **Paragraph 37:** Defendant denies the allegations contained in paragraph 37. By specifically denying the

incorporation by reference in Paragraph 37 and other similar paragraphs, Defendant maintains the integrity of her earlier admissions and denials.

44. **Paragraphs 38-39**: Defendant admits that she signed a Grant, Bargain, and Sale Deed, but denies that it was improper.

45. **Paragraphs 40-41**: Defendant admits that she signed a Grant, Bargain, and Sale Deed, but denies that it was improper.

46. **Paragraph 42**: Defendant denies all the allegations in paragraph 42 as follows:

    a. Defendant asserts that the transfers were made to settle debts owed to Defendant Lu Zhang at a time when Defendant Mengjing Lu was in serious physical and mental health and believed her death to be imminent.

    b. Defendant asserts that all legal fees were prepaid upon requests both before and after the transfers, and Defendant did not owe Plaintiff any legal fees.

    c. Defendant explicitly denies that the transfers were not disclosed, as they were disclosed to Plaintiff in August 2020, as detailed in paragraph 4, Section I, and the transfers are a matter of public record.

    d. Defendant denies that she was insolvent or that assets were concealed or removed from the United States. Defendant did not owe Plaintiff any legal fees and continued to prepay Plaintiff after the transfers. It was Plaintiff who concealed the legal costs by refusing to provide Defendant with detailed and periodic billing, thereby depriving Defendant of the right to inspect the costs and terminate the contracts in a timely manner.

    e. Defendant also denies that she retained possession or control of the transferred properties.

    f. Furthermore, any actions challenging such transfers are time-barred pursuant to Cal. Civ. Code § 3439.09, since the transfers were made and disclosed to Plaintiff in August 2020, more than four years prior to the filing of the Complaint.

47. **Paragraph 43:** Defendant denies all the allegations in paragraph 43. Defendant asserts that at the time of transfer, all legal fees were prepaid upon requests, and thus she believed that she did not owe Plaintiff any legal fees. Therefore, the transfers were not made with the intent to hinder or delay her creditors. It was Plaintiff who committed fraud by refusing to send periodic and detailed billing statements, thus depriving Defendant of the right to inspect the costs and terminate the contracts in time.

48. **Paragraph 44:** Defendant denies all the allegations contained in paragraph 44. Defendant denies that the transfers were made to remove substantial or all assets from the U.S. or that she became insolvent as a result. Defendant denies that her debts exceeded her assets at the time of the transfers, because she believed she did not owe Plaintiff any legal fees and was prepaying Plaintiff's legal fees before and after the transfers upon requests. Defendant reiterates that it was Plaintiff who refused to send Defendant detailed and periodic billing statements and thus deprived Defendant of the right to terminate the contract on time. It was also because Plaintiff retains $175,397.56 belonging to Defendant that Defendant became indebted to IRS.

49. **Paragraph 45:** Defendant denies the allegations contained in paragraph 45. Defendant asserts that the transfers were made to settle the debts owed by Defendant Mengjing Lu to Lu Zhang. Defendant reiterates that all legal fees were prepaid both before and after the transfers upon requests, and that she believed that she did not owe Plaintiff any legal fees by the time of the transfers. There were no claims of debts from Plaintiff either. On the contrary, Plaintiff was concealing the legal costs by refusing to send detailed billing statements with the intent to deprive Defendant of the right to inspect the costs and terminate the contracts. Thus, the allegation of fraudulent transfer is ungrounded.

50. **Paragraph 46:** Defendant denies the allegations contained in paragraph 46. Defendant asserts that the transfers were made to settle debts owed to Defendant Lu Zhang. Defendant denies that the transfers were fraudulent, because all legal fees were prepaid upon requests both before and after the transfers,

and by the time of the transfers, Defendant believed that she did not owe Plaintiff any legal fees. As detailed in paragraph 8, Section I, if the legal fees were beyond her ability to pay, she would have terminated the contract. It was Plaintiff who refused to send periodic and detailed billing statements with the intent to deprive Defendant of the right to inspect the costs and terminate the contracts in time.

51. **Paragraph 47:** Defendant denies the allegations contained in paragraph 47. Defendant contends that she did not owe Plaintiff any legal fees. On the contrary, Plaintiff retains $175,397.56 belonging to Defendant as detailed in paragraph 23, Section I. As stated in previous paragraphs, the allegation of the fraudulent transfers is ungrounded.

52. **Paragraph 48:** Defendant denies the allegations contained in paragraph 48. By specifically denying the incorporation by reference in Paragraph 48 and other similar paragraphs, Defendant maintains the integrity of her earlier admissions and denials.

53. **Paragraph 49:** Defendant denies all the allegations contained in paragraph 49. As stated in previous paragraphs, Defendant Mengjing Lu did not owe or did not believe to owe Plaintiff any legal fees; there is no way for Defendant Lu Zhang to know of such alleged non-existential debts. Defendant specifically denies that the transfers were part of any conspiracy to defraud creditors. Defendant asserts that the transfers were legal, made with valid consideration, and did not conceal ownership.

54. **Paragraph 50:** Defendant denies the allegations contained in paragraph 50. Defendant specifically denies the existence of any confidential agreement regarding possession and control of the property. Defendant asserts that Defendant Lu Zhang is the true and rightful owner of the properties.

55. **Paragraph 51:** Defendant denies the allegations contained in paragraph 51. Defendant reiterates that Defendant Lu Zhang is the true and rightful owner of the properties, and denies that the transfers were fraudulent or part of any conspiracy.

56. **Paragraph 52:** Defendant denies the allegations contained in paragraph 52. Defendant denies that the transfers were fraudulent or part of any conspiracy. Defendant asserts that Defendant Lu Zhang is the

rightful owner of the properties, and therefore Defendant Lu Zhang is not liable for the groundless alleged damages.

57. **Regarding the claims for relief:** Defendant denies that Plaintiff is entitled to the relief sought in the Complaint.

### III. AFFIRMATIVE DEFENSES

As and for affirmative defenses to the Complaint, Defendant alleges:

58. **Breach of Contract by Plaintiff:** Plaintiff breached the terms of the parties' agreements in multiple ways, including but not limited to:

   a. Failing to send Defendant periodic billing statements, as expressly required by Term 7 of both the First and Second "Legal Representation Fee Agreements," despite repeated requests by Defendant.

   b. Breaching the Oral Agreement entered into on December 28, 2021, wherein Plaintiff agreed that all costs incurred before December 8, 2021, would be capped at $120,000, and a 15% discount would be applied to all costs incurred after December 8, 2021.

59. **Unconscionability:** The First and Second Fee Agreements are unconscionable due to the circumstances of their execution (Defendant's profound grief and duress) and their excessively one-sided and oppressive terms.

60. **Misappropriation of Client Funds / Breach of Fiduciary Duty:** Plaintiff has retained funds belonging to Defendant in excess of any agreed-upon or reasonable fees, constituting a misappropriation of client funds and a breach of fiduciary duty.

61. **Fraud:** Plaintiff committed fraud by deliberately refusing to provide timely and detailed billing statements. This deliberate tactic prevented Defendant from accurately monitoring fees and exercising her right to terminate the agreement in a timely manner. Compounding this, the Plaintiff intentionally

inflated the costs recorded in the final invoices by over-logging.

62. **Statute of Limitations (Fraudulent Transfer):** Any claim regarding the alleged fraudulent transfers made in August 2020 is time-barred pursuant to California Civil Code § 3439.09, as these transfers occurred more than four years prior to the filing of the Complaint.

63. **Improper Venue:** As stated in the response to Paragraph 7, venue in the Northern District of California is improper given that subsequent agreements and the core events of the dispute, including the properties involved in alleged fraudulent transfers and conspiracy, are located in Nevada.

64. **Failure of Consideration:** The fees sought by Plaintiff are not supported by adequate consideration, as the services provided were often clerical, inefficient, or unnecessary, and billed at an unreasonable rate.

65. **Offset:** Defendant is entitled to an offset against any amounts claimed by Plaintiff, as Plaintiff currently retains $175,397.56 belonging to Defendant.

## IV. COUNTERCLAIMS

Defendant Mengjing Lu, as Counter-Plaintiff, hereby asserts the following Counter Complaint against Counter-Defendant Xiaoyong Lai:

## COUNT I: BREACH OF CONTRACT

66. Counter-Plaintiff incorporates by reference the allegations set forth in Section I and Section II of her Answer above, as though fully set forth herein.

67. On or about November 4, 2019, June 4, 2021 abd December 28, 2021, Counter-Plaintiff and Counter-Defendant entered into two written Fee Agreements and an Oral Agreement regarding the payment of attorneys' fees, as detailed in paragraphs 1, 6 and 11 in Section I.

68. Counter-Defendant breached the Fee Agreements by refusing to provide timely and detailed billing statements, despite repeated requests from Counter-Plaintiff.

69. Counter-Defendant breached the Oral Agreement by failing to abide by the agreed-upon fee structure,

and by refusing to return the funds owed to Counter-Plaintiff.

70. As a direct and proximate result of Counter-Defendant's breach, Counter-Plaintiff has suffered damages in the amount of at least $175,397.56.

**COUNT II: UNJUST ENRICHMENT**

71. Counter-Plaintiff incorporates by reference the allegations set forth in Section I and Section II of her Answer above, as though fully set forth herein.

72. Counter-Defendant has retained funds in the amount of at least $175,397.56 that rightfully belong to Counter-Plaintiff.

73. It would be unjust for Counter-Defendant to retain these funds, as they exceed the amount agreed upon for his services and the reasonable value of any services provided.

74. Counter-Plaintiff is entitled to restitution of these funds to prevent Counter-Defendant's unjust enrichment.

**COUNT III: FRAUD**

75. Counter-Plaintiff incorporates by reference the allegations set forth in Section I and Section II of her Answer above, as though fully set forth herein.

76. Counter-Defendant made material misrepresentations and omissions to Counter-Plaintiff, including but not limited to:

    a. Misrepresenting the scope of the "First Fee Agreement" by commencing work on "Recovery Possession" and appeal cases without separate agreements.

    b. Failing to provide timely and detailed billing statements despite contractual obligations and repeated requests, with the intent to conceal excessive charges and prevent Counter-Plaintiff from terminating the agreements.

    c. Misrepresenting the stipulations of the "Settlement Order" regarding the release of interpleaded

funds, leading Counter-Plaintiff to sign it under false pretenses.

d. Intending to overcharge Counter-Plaintiff by over-logging tasks and refusing to provide timely and periodic billing statements, thereby depriving her right to inspect the logged tasks.

e. Intending to induce Counter-Plaintiff to continue the contract and depriving her right to terminate the contract in a timely manner by refusing to provide timely and periodic billing statements, even when requested by Counter-Plaintiff.

77. Counter-Defendant knew these representations were false or made them with reckless disregard for their truth.

78. Counter-Defendant intended to defraud Counter-Plaintiff and induce her to continue paying fees and to sign documents that were not in her best interest.

79. Counter-Plaintiff justifiably relied on Counter-Defendant's misrepresentations and omissions.

80. As a direct and proximate result of Counter-Defendant's fraud, Counter-Plaintiff has suffered damages, including but not limited to, excessive legal fees paid and funds unjustly retained by Counter-Defendant.

## COUNT IV: BREACH OF FIDUCIARY DUTY

81. Counter-Plaintiff incorporates by reference the allegations set forth in Section I and Section II of her Answer above, as though fully set forth herein.

82. As Counter-Plaintiff's attorney, Counter-Defendant owed Counter-Plaintiff a fiduciary duty, including duties of loyalty, honesty, and full disclosure.

83. Counter-Defendant breached his fiduciary duties to Counter-Plaintiff by, among other things:

a. Failing to provide timely and accurate billing statements.

b. Commencing tasks out of scope of agreements without informing Counter-Plaintiff.

c. Concealing the true extent of legal fees being incurred.

d. Misrepresenting the terms of the "Settlement Order."

 e. Retaining funds in excess of any agreed-upon or reasonable fees.

 f. Placing his own financial interests above those of Counter-Plaintiff.

84. As a direct and proximate result of Counter-Defendant's breach of fiduciary duty, Counter-Plaintiff has suffered damages, including but not limited to, excessive legal fees paid and funds unjustly retained by Counter-Defendant.

## IV. PRAYER FOR RELIEF

WHEREFORE, Defendant and Counter-Plaintiff Mengjing Lu prays for the following relief against Plaintiff and Counter-Defendant Xiaoyong Lai:

85. That Plaintiff's Complaint be dismissed with prejudice.

86. That Defendant be awarded her costs of suit.

87. That Defendant be awarded damages on her Counter-Complaint in the amount of at least $175,397.56, plus any additional damages as may be proven at trial.

88. For an order declaring the "First Fee Agreement" and "Second Fee Agreement" unconscionable and unenforceable.

89. For an order requiring Plaintiff to return all funds unjustly retained.

90. For such other and further relief as the Court deems just and proper.

Dated: May 23, 2025

Respectfully submitted,

Meng Jing Lu (Pro Se)